# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN FRIEDMAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TORCHMARK CORPORATION; UNITED AMERICAN INSURANCE COMPANY; DOES 1 THROUGH 10, inclusive, and each of them,<br><br>Defendants. | CASE NO.  12-CV-2837-IEG (BGS)<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Doc. No. 22] |

Presently before the Court is Defendant United American Insurance Company's ("Defendant") motion to dismiss Plaintiff Jordan Friedman's ("Plaintiff") First Amended Complaint ("FAC") for failure to state a claim. [Doc. No. 22, Def.'s Mot. to Dismiss ("Def.'s Mot.").]  For the following reasons, the Court **GRANTS** the motion, and dismisses the action with prejudice.

## BACKGROUND

Plaintiff alleges that Defendant is a major subsidiary of Torchmark Corporation,[1] and sells, services, and maintains health, life, and accident insurance

---

[1] The Court previously dismissed Torchmark Corporation from this action for lack of jurisdiction. [Doc. No. 17.]

policies for consumers. [Doc. No. 19, FAC ¶ 5.] Plaintiff states that in or around October 2012, Defendant contacted Plaintiff on his residential home telephone using a pre-recorded message. [Id. ¶¶ 8-10.] The message invited Plaintiff to contact Defendant at a specific phone number to attend a "recruiting webinar" on October 17, 2012 "wherein Plaintiff could learn about [Defendant's] products and services in order to sell said products and services to other Americans who are in need of health or other similar insurance policies." [Id. ¶ 9.] Plaintiff alleges that Defendant "placed no less than two . . . such telephone calls to Plaintiff's residential home telephone leaving identical messages . . . ." [Id. ¶ 10.]

Plaintiff states that the calls placed by Defendant used an "automatic telephone dialing system." [Id. ¶ 14.] Plaintiff also alleges that the voice messages left by Defendant used an "artificial or pre[-]recorded voice." [Id. ¶ 15.] Plaintiff further alleges that Defendant's calls were not for emergency purposes. [Id. ¶ 16.] Plaintiff is not a customer of Defendant, and has never purchased or used any goods or services offered by Defendant. [Id. ¶ 11.] He also states that he has never provided any personal information, including his home telephone number, to Defendant, and that his home telephone number has been registered with the National Do Not Call Registry since October 28, 2008. [Id. ¶¶ 11-12.]

On November 27, 2012, Plaintiff filed a Complaint the instant action on behalf of himself and others similarly situated. The Complaint asserted only one cause of action for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. [Doc. No. 1, Complaint ¶¶ 29-32.] Defendant subsequently filed a motion to dismiss, arguing that Plaintiff's sole cause of action fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). [Doc. No. 5, Def.'s Mot.] The Court granted Defendant's motion to dismiss for failure to state a claim, and granted Plaintiff leave to amend. [Doc. No. 18.]

Plaintiff filed a FAC on May 7, 2013, which presents the following new

allegations. [Doc. No. 19, FAC.] Plaintiff alleges that upon completion of the webinar, individuals receive an email which provides the opportunity to enter into a contract with Defendant. The contract references "fees" that need to be paid by individuals to "allow them to sell Defendant's products in other states, in exchange for providing them access to a customer-base who will ultimately be sold Defendant's health-insurance [sic] policies." [Id. ¶ 13] Plaintiff also alleges that Defendant "promises to provide independent contractors with a client-list labeled 'Turning 65,' if they either meet a particular sales goal within a 90-day period, or if they pay Defendant a particular amount." [Id.] Plaintiff thus characterizes the messages to Plaintiff as being designed to "encourag[e] individuals to invest money in [Defendant's] brokerage services, [in order] to facilitate the sale of Defendant's products and services." [Id.] Defendant subsequently filed the present motion to dismiss the FAC for failure to state a claim. [Doc. No. 22, Def.'s Mot.]

## DISCUSSION

**I.      Motion to Dismiss**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely

Case 3:12-cv-02837-IEG-BGS   Document 26   Filed 08/13/13   Page 4 of 12

consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 1949 (quoting Twombly, 550 U.S. at 678).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (alteration in original). A court need not accept "legal conclusions" as true. Iqbal, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Further, a court generally may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003). However, a court "may take judicial notice of matters of public record . . . as long as the facts noticed are not subject to reasonable dispute." Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

/ / /
/ / /
/ / /
/ / /
/ / /

- 4 -   12cv2837

### A.     Request for Judicial Notice

Defendants request that the Court take judicial notice of (1) the profile for Defendant as found on the website for the California Department of Insurance; and (2) the schedule of fees and charges from the website of the California Department of Insurance. [Doc. No. 22-1, Request for Judicial Notice ("RJN").] Plaintiff does not oppose Defendant's Request for Judicial Notice. [Doc. No. 23-1, Non-Opp. to RJN.] Plaintiff does argue, however, that "introduction of such evidence raises questions of fact not appropriate for resolution on the present motion to dismiss." [Id. at 2.] Plaintiff asserts that if the Court considers extrinsic evidence, this motion to dismiss must be converted to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Doc. No. 23, Pl.'s Opp. at 8.]

"The court may judicially notice a fact that is not subject to reasonable dispute because it:  (1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice of "records and reports of administrative bodies." Mack v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds) (quoting Interstate Natural Gas Co. v. Southern Cal. Gas Co., 209 F.2d 380, 385 (9th Cir. 1953)). Courts may consider matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

The Court **GRANTS** Defendant's request for judicial notice. Despite Plaintiff's argument, the Court declines to convert this motion to dismiss to a motion for summary judgment because the Court may properly consider facts outside of the complaint that are judicially noticed. See id.

### B.     Violation of the TCPA

The TCPA generally makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a

message without the prior express consent of the called party . . . ." 47 U.S.C. § 227(b)(1)(B). 47 U.S.C. § 227(b)(2)(B) states that the Federal Communications Commission ("FCC") may exempt the following by regulation when implementing this statute: "calls that are not made for a commercial purpose," and "such classes or categories of calls made for commercial purposes as the [FCC] determines . . . will not adversely affect the privacy rights that this section is intended to protect; and do not include the transmission of any unsolicited advertisement."

"Pursuant to its delegated authority, the FCC has exempted from the general prohibition on automated commercial calls those that both 'do[] not include or introduce an unsolicited advertisement or constitute a telephone solicitation[,]' 47 C.F.R. § 64.1200(a)(2)(iii) (2011) (amended 2012), and do not adversely affect the privacy rights of the called party, see Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 FCC Rcd. 14014, 14095 ¶ 136, 2003 WL 21517853 (F.C.C. July 3, 2003)" ("2003 Report and Order "). Chesbro v. Best Buy Stores, L.P., 705 F.3d 913, 917 (9th Cir. 2012); see 47 U.S.C. § 227(b)(2)(B).

"[A]pplication of the prerecorded message rule should turn, not on the caller's characterization of the call, but on the purpose of the message." 2003 Report and Order at 14098 ¶ 141 (footnote omitted); see also Chesbro, 705 F.3d at 918. Therefore, a court must "turn to the calls at issue to determine whether they demonstrate a prohibited advertising purpose." Id. In Chesbro, the Ninth Circuit held that calls which "were aimed at encouraging listeners to engage in future commercial transactions with Best Buy to purchase its goods . . . constituted unsolicited advertisements [and] telephone solicitations" within the meaning of the TCPA. Chesbro, 705 F.3d at 919.

The Court previously found the following when ruling on Defendant's previous motion to dismiss Plaintiff's Complaint:

In light of relevant case law and regulations, Defendant's calls to Plaintiff

> regarding the recruiting webinar constitute neither unsolicited advertisements nor telephone solicitations. Regarding unsolicited advertisements, the Court finds persuasive the Lutz court's conclusion that an offer of employment is not "material advertising the commercial availability . . . of any property, goods, or services" within the ordinary meaning of those words of the TCPA. 47 U.S.C. § 227(a)(4); Lutz, 859 F. Supp. at 181-82. The messages in the instant case inviting Plaintiff to attend a recruiting webinar wherein Plaintiff could learn about Defendant's products to potentially sell them [Doc. No. 1, Compl. ¶ 10] is similar to the offer of employment in Lutz. Defendant's message was not aimed at encouraging Plaintiff to engage in future commercial transactions with Defendant to purchase its goods. See Chesbro, 705 F.3d at 919. Rather, Defendant's message informed Plaintiff about a recruiting webinar that could have resulted in an opportunity to sell Defendant's goods, which is akin to an offer of employment. . . .
>
> Defendant's calls also do not constitute telephone solicitations because they were not made for the purpose of encouraging the purchase of property, goods, or services. See 47 U.S.C. § 227(a)(4). The Ninth Circuit has construed the language to mean that the messages were made for the purpose of encouraging the listener to engage in future commercial transactions with the caller to purchase property, goods, or services. Chesbro, 705 F.3d at 919. In the instant case, Plaintiff only alleges that the messages invited Plaintiff to learn about Defendant's products in order to potentially sell them to others. [Doc. No. 1, Compl. ¶ 10.] Accordingly, as Plaintiff fails to allege that the messages constitute unsolicited advertisements or telephone solicitations, he is unable to state a claim under the TCPA.

[Doc. No. 18.]

Defendant argues that Plaintiff's FAC fails for the same reasons the Court noted in its previous Order. Plaintiff counters by raising many of the same arguments that it raised against Defendant's previous motion to dismiss, such as the fact that the prerecorded message "was a marketing tool designed to make Defendant money in the long run." [Doc. No. 23, Pl.'s Opp. at 9; see Doc. No. 24-1, Ex. A.] The Court incorporates by reference its findings on the previous motion to dismiss for all of the same arguments raised by Plaintiff here.

Plaintiff's only new argument is that "the prerecorded messages do not constitute unsolicited advertisements because [it] is a pretext to sell products to Plaintiff and similarly situated consumers, such as a "Turning 65 List." [Doc. No. 23, Pl.'s Opp. at 9.] Plaintiff also raises the argument that after the conclusion of the webinar, individuals receive an email providing them the opportunity to enter

into a contract with Defendant. [Id. at 12; Doc. No. 19, FAC ¶ 13.] This contract references fees that need to be paid by the individuals. [Id.; Doc. No. 23, Pl.'s Opp. at 12] Plaintiff concludes that "Defendant, through its automated telephone dialing system, is placing uninvited telephone calls encouraging individuals to invest money in its brokerage services . . . ." [Id.]

### 1. Unsolicited Advertisement

"'[U]nsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission...." 47 U.S.C. § 227(a)(5). The FCC has found that "[o]ffers for free goods or services that are part of an overall marketing campaign to sell property, goods, or services constitute 'advertising the commercial availability or quality of any property, goods, or services.'" 2003 Rules and Regulations at 14097-98. The FCC therefore concluded that "prerecorded messages containing free offers and information about goods and services that are commercially available are prohibited to residential telephone subscribers, if not otherwise exempted." Id.

The Court again finds that Defendant's messages do not constitute an unsolicited advertisement because they do not advertise the commercial availability of any property, goods, or services. See 47 U.S.C. § 227(a)(5). The Court still finds the reasoning in Lutz Appellate Servs., Inc. v. Curry, 859 F.Supp. 180 (E.D. Pa. 1994) to be persuasive. Regarding unsolicited advertisements, the Court finds persuasive the Lutz court's conclusion that an offer of employment is not "material advertising the commercial availability . . . of any property, goods, or services" within the ordinary meaning of those words of the TCPA. 47 U.S.C. § 227(a)(4); Lutz, 859 F. Supp. at 181-82. The messages in the instant case inviting Plaintiff to attend a recruiting webinar wherein Plaintiff could learn about Defendant's products to potentially sell them [Doc. No. 19, FAC ¶ 9] is similar to the offer of employment in Lutz. Plaintiff argues that Lutz is distinguishable because Defendant in the

present case is not making an employment offer, but is making an offer to enter into an independent contractor relationship. [Doc. No. 23, Pl.'s Opp. at 20-21.] The Court finds Plaintiff's argument unpersuasive as an offer of an independent contractor relationship is still not material advertising the commercial availability of any property, goods, or services. See Lutz, 859 F. Supp. at 181-82.

Furthermore, the mere fact that after an individual enters into an independent contractor relationship with Defendant and the individual may choose to purchase the "Turning 65" list does not mean that Defendant's message was advertising the commercial availability of goods or services.

Regarding fees, the Court must take as true Plaintiff's allegation that "Defendant collects 'fees' from independent contractors, which allow them to sell Defendant's products in other states, in exchange for providing them access to a customer-base who will ultimately be sold Defendant's health-insurance policies." See Cahill, 80 F.3d at 337-38. [Doc. No. 19, FAC ¶ 13.] Although the Court took judicial notice of the State of California Department of Insurance Schedule of Fees and Charges, this document on its own does not support Defendant's explanation that the fee would in turn be paid to the state of California. [Doc. No. 22, Def's Mot. at 7; Doc. No. 22-1, RJN Ex. B.]

Even accepting Plaintiff's allegation as true, the Court nonetheless finds that the messages are not unsolicited advertisements. Even though the messages contained an offer to participate in a free webinar, this webinar was not part of an overall marketing campaign to sell access to a customer-base to Plaintiff. See 2003 Rules and Regulations at 14097-98. Rather, the purpose of the webinar was to inform Plaintiff about the opportunity for an independent contractor position with Defendant, in order to sell its products.

Additionally, as discussed in the Court's previous order, these messages do not constitute unsolicited advertisements under the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 70 Fed. Reg.

19330-01, 19335-36 (Apr. 13, 2005) ("2005 Rules and Regulations").  The 2005 Rules and Regulations distinguish between messages that encourage consumers to listen to free broadcasts and messages and those that encourage them to listen to programming for which they must pay, and state that only the latter constitute unsolicited advertisements.  Id.  Because Plaintiff does not allege that he must pay to listen to the webinar, the messages are not unsolicited advertisements under the 2005 Rules and Regulations.  Accordingly, the Court finds that the messages are not unsolicited advertisements.

### 2. Telephone Solicitation

The term "telephone solicitation" is defined by the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . . ." 47 U.S.C. § 227(a)(4).  "Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context."  Chesbro, 705 F.3d at 918.  The FCC has stated that "[i]f the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement."  2003 Rules and Regulations at 14098.

The Court finds that Defendant's messages also do not constitute telephone solicitations because the messages are not intended to encourage Plaintiff to engage in future commercial transactions with Defendant to purchase or invest in property, goods, or services.  See 47 U.S.C. § 227(a)(4); Chesbro, 705 F.3d at 919.  The Court must determine whether the intent of the call is to offer property, goods, or services for sale during the call or in the future.  See 2003 Rules and Regulations at 14098.  Even in the FAC, Plaintiff still only alleges that the messages invited him to learn about Defendant's products in order to potentially sell them to others.  [Doc. No. 19, FAC ¶ 9.]

The message does not mention the "Turning 65" list or buying access to a

customer-base. Even though Plaintiff argues that Defendant is encouraging individuals to invest money in its brokerage services through its messages through the purchase of the "Turning 65" list. [Doc. No. 23, Pl.'s Opp. at 12], the Court finds that the intent of the messages is not to encourage an individual to by the "Turning 65" list or access to the cusomter-base, but rather to inform them about an independent contractor opportunity with Defendant. In fact, in order to even be able to purchase the list, an individual must at least do the following: listen to the message, complete the webinar, receive an email from Defendant providing him or her with the opportunity to enter into a contract with Defendant, enter into a contract with Defendant, and then fail to meet a particular sales goal within a 90-day period. [Id.; Doc. No. 19, FAC ¶ 13.] To buy access to the customer-base, an individual must enter into a contract with Defendant. [Id.] Although "[n]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context," Chesbro, 705 F.3d at 918, it not at all evident from the messages that Defendant is attempting to encourage Plaintiff to purchase this list or access to the customer-base. The Court finds that the messages were intended to inform Plaintiff of the opportunity to enter into an independent contractor position with Defendant, and not to offer goods or services for sale. See 2003 Rules and Regulations at 14098.

  Therefore, the Court finds that Plaintiff's additional allegations in the FAC still do not bring Defendant's prerecorded messages within the ambit of unsolicited advertisements or telephone solicitations. Accordingly, as Plaintiff fails to allege that the messages constitute unsolicited advertisements or telephone solicitations, he is unable to state a claim under the TCPA. Because the Court grants the motion to dismiss on the same grounds as it did the previous motion to dismiss, the Court finds that further amendment cannot cure the deficiency. Accordingly, the Court denies leave to amend. See Schreiber Distrib., 806 F.2d at 1401.

/ / /

## CONCLUSION

For the reasons above, the Court **GRANTS** Defendant's motion to dismiss for failure to state a claim. The Court denies leave to amend. The clerk is directed to close the case.

**IT IS SO ORDERED.**

**DATED:** August 13, 2013

**IRMA E. GONZALEZ**
**United States District Judge**